Maston vs. Fanning.

---

## MASTON vs. FANNING.

1. Where the verdict and judgment are manifestly for the right party, they will not be set aside for the refusal of the court to give an instruction, when such refusal could not operate to the injury of the party asking the instruction.

2. A judgment will not be reversed for refusing to give an instruction, the substance of which has been given in another form.

## ERROR to Platte.

Isaac N. Jones, for Plaintiff in error.

### POINTS AND AUTHORITIES.

1. To entitle Fanning to recover in this action, he was bound to prove the commission of a trespass by Maston, and the amount of damages resulting therefrom. (2 Starkie's Evidence 802.)

2. That if Maston had a pre-emption right to the land at the time the timber was cut, he was not liable in this action. (See acts of Congress, 1838-40. Mo. Decisions, January Term 1845, Lewis vs. Lewis; 2 Star. Ev. 815.]

3. That a deed, patent, or Receiver's certificate, is no evidence of

title being in the purchaser prior to their date.    (8 Mass. 230, 239; 9 Mass. 307, 310; 12 Mass. 456, 463.)

4. That the purchase of the pre-emption claim from Ellsworth by Fanning, conferred no title to the land on Fanning.    (See acts of Congress, 1838, 1840.)

5. That a pre-emption right was the only title which Fanning could have had to the land, at the time the timber was cut, and that Maston had a right to refer that title to the jury under the instruction of the court, as presented in the fourth refused instruction.

6. That the damages are excessive.    The evidence showing that the principal part of the timber was cut by Fanning's consent, and that the value of the timber and damage done the land did not exceed $100.

7. That the evidence in relation to the purchase of the claim by Fanning from Ellsworth, was illegal, and calculated to mislead the jury, and ought to have been rejected.


W. B. ALMOND, for Defendant in error.


POINTS.

The counsel for Fanning insists that the decision of the court herein is right, and should stand for the following reasons :

1. Fanning clearly shows himself by the testimony, and by the Receiver's receipt offered and read in evidence without objection, entitled to a pre-emption right under the act, 4th Sept. 1841, and that during the time he was so entitled, Maston cut and carried off the timber sued for.

2. The proof introduced by Maston to sustain his plea of license, amounts to nothing ; it only shows that for sake of peace, Fanning agreed that Maston might cut and use and *improve* with the timber on the south-west quarter of said tract of land, *on* said land, but that by the plainest implication, the timber was not to be removed off the land. This clearly was no license to strip the south-west quarter of said tract of land of its most valuable timber, and haul it off to another tract. Besides, Maston cut timber on other parts of said tract of land, and moreover, Maston does not complain as to his instruction as to license, for that instruction was given to the jury, and they find against him on that issue.

3. To show clearly that Fanning was entitled to the *exclusive* pre-

emption right on the land named in the declaration from the time he settled on it, to the commencement of the suit, the counsel for Fanning refers to the whole of the testimony given in the cause, and the act of Congress, "to distribute the proceeds of the sales of the public lands, and to grant pre-emption rights," approved Sept. 4th, 1841.

4. To show that Maston forfeited all right which he pretended to set up by pre-emption under the act of Congress of 1st June, 1840, by his sale and gift to Munn, Ellsworth and Fanning, as detailed in evidence, the counsel for Fanning refers to the affidavit required by said act, reviving the act of Congress of 22d June, 1838. And further, the testimony shows that Maston entered and paid for another and different tract of land, under the act of June 1st, 1840.

5. To show that trespass can be maintained on a pre-emption right, see Revised Code of 1835, p. 237.

McBRIDE, J., delivered the opinion of the court.

Joseph Fanning brought his action of trespass *quare clausum fregit*, against Matthias Maston,, to the October Term, 1844, of the Platte circuit court, at which time the defendant filed a plea of not guilty, and a special plea that he had license from the plaintiff. Issue having been taken, the parties went to trial before a jury, which resulted in a verdict in favor of the plaintiff, and an assessment of $100 for his damages. The defendant filed his motion for a new trial, assigning the usual causes, which being overruled, he excepted to the opinion of the court, and now brings his case here by writ of error.

EVIDENCE IN THE BILL OF EXCEPTIONS.

*Henry F. Howard,* a witness on the part of the plaintiff, stated, that he was the step son of the plaintiff, that early in the year 1841, the plaintiff arrived in Platte county, a stranger, and shortly thereafter was taken sick and confined to his bed. The plaintiff had a large family, and wished to purchase a home for himself and family to live on ; that he, plaintiff, heard that one Ellsworth had a good place to sell, but he heard at the same time that Maston, the defendant, claimed or had claimed it. Plaintiff being sick in bed, and unable to go himself, requested witness to go and see Ellsworth and his place. Witness went accordingly—saw Ellsworth and his place—was pleased with said place and the price, and went to see Maston, the defendant, also.

Witness told Maston that Fanning had sent him to see said Maston; that Fanning had heard that the Ellsworth place was for sale; but that he had heard that Maston once claimed it by pre-emption, and lived on it, and Fanning wished to hear from him, Maston, and know all about it, before he would buy of Ellsworth. Maston then told witness that he had once lived on it, and had once claimed and held a pre-emption right thereon, but that he had abandoned it, and settled on the prairie quarter, where he was then living. That he did not like Ellsworth as a neighbor, and wished him out of the neighborhood—that he wished Fanning to buy said place of Ellsworth, for he, Maston, wished from what he had heard of him, to have Fanning for a neighbor. That one James Munn had a claim to the north half of the quarter section of land in the prairie, on which he, Maston, was living. That he, Maston, wished to buy out and extinguish said Munn's right to said north half, and that said prairie quarter was all he wanted—that if Fanning, the plaintiff, would aid and assist him in effecting a compromise with said Munn, by which he, Maston, could buy out said Munn's interest in said north half of said prairie quarter, and by which said Munn would abandon and give up said north half to said Maston, then defendant agreed that he would give up all his interest to Fanning in the Ellsworth place, and quit and abandon it forever to him; and that he, Maston would pay him, witness, $20 for his trouble and aid in effecting said compromise. Witness further stated that shortly thereafter, he and Fanning did by their efforts succeed in effecting a compromise between said Maston and Munn, in the way above indicated by said Maston, and that Munn relinquished and abandoned all of his right to the said north half of said prairie quarter section of land, and that Maston relinquished and abandoned forever all his right to the Ellsworth place to Fanning. The Ellsworth place is the same quarter section of land described in the declaration in this case, and is situated in Platte county, Missouri. The witness further states, that immediately after this the plaintiff bought said place of Ellsworth, and paid therefor the sum of $300—erected a good dwelling house thereon—moved into and on it with his family, consisting of a wife and children, and has resided thereon as a house-keeper by personal residence, and made it his only home, from the time of his said settlement, which was some time in the year 1841, to the present time. That at the time of his said settlement, Fanning was a free white citizen of the United States, and over the age of twenty-one years, and the head of a family consisting of a wife and children. That he, Fanning, did not quit or abandon his home or his own land to make the settlement aforesaid, and that at the time of

20

Maston vs. Fanning.

said settlement, Fanning was not owner nor proprietor of 320 acres of land in this or any other State or Territory ; and that at the time of said settlement or since, said Fanning did not and has not owned any land any where except the quarter section named in the declaration, and that at the time of and previous to the settlement, the Indian title had been extinguished to said quarter section of land, and it had been surveyed by the government of the United States.    Witness further states, that some time in the year 1844, said Fanning entered at the United States land office, at Plattsburgh, Mo., the quarter section of land named in the declaration, and before spoken of, under the act of Congress of 4th Sept., 1841, by virtue of his settlement aforesaid.  Witness further stated, that the quarter section of land in dispute and named in the declaration, was and is principally valuable on account of the timber on it—it being near a large prairie where timber is and must be valuable ; and that shortly after Fanning settled thereon, and during the years 1842 and '43, Maston with his hired hands cut down the most valuable timber trees, oaks, walnuts, hickory, and the other description of trees named in the declaration, on said quarter section of land, and carried and hauled them off the same, and converted them to his own use on another and different quarter section of land, to-wit : the one on the prairie, before spoken of.    That most of said timber trees were cut down on and carried off the south-west quarter of the quarter in contest—but that a considerable number of the timber trees cut down and carried off as aforesaid were cut down on other parts of the quarter section named in the declaration.    Witness states that Maston and his hands had made a complete destruction of the timber on the said south-west quarter of the land in dispute—witness had noticed closely, and often seen Maston and his hands cutting and hauling said timber off said land, and had often heard Fanning warn and notify him not to do so, and witness had examined the stumps, and the number of the trees taken from said land named in the declaration, and thinks the actual value of the timber cut down by said Maston and his hands, and carried off the land named in the declaration, after the settlement of the plaintiff thereon, and before the commencement of this suit, to be at least one hundred dollars, and he thinks the land was damaged thereby to the amount of two hundred dollars.    Witness stated that he was acquainted with the value of timber in that neighborhood, and of the quality and quantity of the timber so cut by Maston and his hands, and carried off as aforesaid.    Witness further stated that all the timber cut by said Maston and his hands on said land as aforesaid, was by said Maston and his hands hauled off and put on and used on the prairie

quarter as aforesaid. Defendant Maston told him that he had entered the prairie quarter section at the United States land office at Plattsburgh; Mo., under the act of Congress of 1st June, 1840, granting preemption rights.

James ——, a witness for the plaintiff, stated that he owned and had a claim to the south half of the quarter section now in dispute; and that he owned and had a claim to the north half of the quarter section of land lying north of the one now in contest, in the prairie, in the fall of 1840 or winter of 1841, and that at the same time Maston, the defendant, owned and had a claim to the other halves of the quarter section of land, by the witness first named; and that shortly after the time spoken of by Howard, a witness herein, when Howard conveyed the proposition of Maston to plaintiff, of quieting or procuring the quieting of witness, Munn's claim, to the north half of said quarter section of land, in the prairie, above spoken of, by a compromise; said Fanning did procure the quieting of witness, Munn's claim, to said north half of said prairie quarter, by a compromise, and paid $5 to witness, Munn, out of his own pocket, for effecting the same, and witness gave up and abandoned said north half to Maston. Shortly after this, witness understood from Maston, that he abandoned and gave up to Fanning all his right and claim, to the quarter section of land in dispute, and Fanning thereupon bought said quarter section of land, (the one in dispute) of Ellsworth—paid him $300 therefor, and went on forthwith to make improvements thereon, and has lived thereon ever since. Since the settlement of Fanning on the land as aforesaid, Maston had cut down and hauled off the timber to a great extent, not only on one forty acres of it, but elsewhere, and in his opinion, the lowest estimate of the value of said timber cut, is $50, and if the land had been or was his, he would not have had said timber cut for $100. He thought the cutting and hauling off said timber damaged the land $100. He further stated that all the timber cut on said land by Maston, was hauled off by Maston, and put on his said prairie quarter—that some time afterplaintiff had settled on the quarter section of land in dispute, under the purchase aforesaid—plaintiff had a difficulty with defendant, about cutting down and carrying timber off the same, and in Platte City, he heard said plaintiff and defendant have the understanding, and come to this agreement in relation thereto: In future plaintiff was to cut and use whatever timber he might choose on three forties or quarters of said quarter section of land, in improving the same, and if Maston could prove a pre-emption at the United States Land Office thereon, that he was to get Fanning's labor and timber thus

Maston vs. Fanning.

used in improving, and that Maston was to cut and use whatever timber he might choose on the remaining or south-west quarter of the quarter section of land in dispute, in improving the same, and then if Fanning could prove a pre-emption right thereto, at the U. States Land Office, Fanning was to get Maston's labor and the timber cut and used as aforesaid, and both parties were to abide by this agreement till the decision of the case, and the entry of the land at the United States Land Office as aforesaid. That some time before Peter H. Ellsworth, built his house and settled on the quarter section of land in dispute, Maston told him, witness, that said Ellsworth might now build on said quarter section of land, the pre-emption law had passed, and that he, Maston, could hold the whole of the prairie quarter, or half of it, and half of the one in dispute, but that said Peter was not present at this conversation.

The plaintiff then read the Receiver's certificate No. 3532, dated 8th Oct. 1844, for the north-east qr. of S. 36, T. 53; R. 34, at $1 25 per acre, under act of 1841.

*Peter H. Ellsworth*, a witness for plaintiff, stated that in the summer of 1840, and after the 1st June of that year, Maston, the defendant, told him that Ellsworth might go on to the quarter section of land in dispute, and have it, and do with it what he pleased, that he, Maston, was going on to the prairie quarter, (the same spoken of by Munn,) that the pre-emption law had passed to suit him, Maston. He went on said quarter accordingly, erected a good dwelling house, and made other improvements thereon, and resided thereon with his family. Shortly after moving on said land, he sold his claim and improvement thereon to one Woody, who moved on and took possession of the same, who shortly thereafter sold to his, Ellsworth's, father, who sold to Fanning for $300—that whilst he and Woody, or his father, owned said claim and improvements as aforesaid, Maston, never to his knowledge or information, asserted any right or claim to the same, except as detailed by Howard, another witness herein.

The defendant then introduced Peter H. Ellsworth, as a witness, who stated that he came to the neighborhood of the land in dispute, in the spring of 1840, and that the defendant was then living on the quarter section of land in dispute. That said Maston was the head of a family, consisting of a wife and children, and witness thinks that defendant continued to reside on said land till the winter of 1840 or 1841, but cannot state positively that defendant was living on the land described in the declaration, on the 1st June, 1840, but believes he was.

Maston vs. Fanning.

Defendant then introduced —— Hewitt, a witness, who stated that some time after Fanning had settled on the land in dispute, he heard a conversation between plaintiff and defendant, in which both agreed that there was an agreement between them to this effect, that is to say, Maston was to cut and use the timber on the s. w. qr. of the tract of land named in the declaration, till the land should be entered, and that Fanning was to cut and use the timber on three other quarters of the said quarter, till the land should be entered.

The court, of its own accord, and in lieu of the instructions asked by plaintiff, gave the following instructions : "The court intruct the jury, that although the defendant may have had a pre-emption right to the land on which the timber was cut, under the act of 1840, yet if the defendant gave up all his claim to Ellsworth to said claim, and abandoned the same without any intention of setting up his pre-emption claim thereto, and that plaintiff bought the claim of Ellsworth, or any person holding under Ellsworth, and that plaintiff was a free white person and the head of a family, of age—a citizen of the United States, and had the actual possession of the same, by residing thereon, in the year 1841, and that defendant cut down and carried off timber from said land, whilst the plaintiff had the possession of the same, they will find for the plaintiff, unless they believe the defendant had permission from the plaintiff to do so."

The defendant asked and obtained the following instructions :

1. If the jury believe from the evidence, that the title to the quarter section of land mentioned in the declaration, was in the United States, the first day of June, A. D. 1840, and that the defendant was a free white male citizen of the United States, over twenty-one years of age, on the said 1st June, 1840, and a settler by actual personal residence, and a householder on said quarter section of land, on the said 1st June, 1840—then the defendant had a pre-emption right to the said quarter section of land.

2. That if they believe from the evidence, that the defendant had a pre-emption right to the said quarter section of land, as defined in the preceding instruction, at the time of the cutting of the timber mentioned, then they must find for the defendant.

3. If they believe from the evidence, that Maston had leave from the plaintiff to cut the timber when he did, then they must find for the defendant.

Instructions asked by defendant and refused.

1. Before the plaintiff can recover in this action, he must prove the

commission of a trespass by the defendant, and the amount of damage resulting therefrom.

2. That if the jury believe from the evidence, that the defendant had a pre-emption on the quarter from which the timber was cut, then the defendant was not guilty of a trespass in cutting the timber, and they must find a verdict for him.

3. They must disregard all the evidence introduced in regard to Maston's relinquishment of his right to the quarter section from which the timber was cut, as there is no proof that the relinquishment was in writing.

4. That the certificate of entry, issued by the Receiver of the United States Land Office, which has been read in evidence by the plaintiff, conveyed no title to the said quarter section of land, prior to the time said certificate issued.

5. That unless they believe from the evidence, that the title to the said quarter section of land was in the United States, and that the plaintiff had erected a dwelling house on it, and had inhabited the same, and was a free white male citizen of the United States, over the age of 21 years, at the time the trespasses in the declaration mentioned were committed—then they must find for the defendant.

It is assigned for error, that the court permitted illegal evidence to go to the jury—the court erred in giving the plaintiff's instruction, and in not giving a portion of those asked by defendant, and in refusing a new trial.

In reviewing the evidence saved by the bill of exceptions, we are not able to discover any objection of sufficient importance to induce the setting aside the judgment. If we correctly understand the objection, it is that the witnesses testified of and concerning a sale of the improvements, or the right of pre-emption on the land upon which the trespass was committed. This could not well be avoided, and was perhaps necessary to enable the jury to arrive at the conclusion whether or not the defendant had after his sale, abandoned his right to a pre-emption on the land. In all trials of this character, it is well enough to have before the jury all the attendant circumstances, thereby the better to enable them to do full and complete justice between the parties.

That portion of the instruction given by the court at the instance of the plaintiff, which refers to the defendant's prior claim to a pre-emption—his transfer or abandonment of that claim, and the purchase made by the plaintiff, might have been omitted, as no title inured thereby to him. But still we do not think that it was calculated to mis-

lead the jury, especially, when from an examination of the evidence, we find there was abundance to authorize the finding of the jury.

The first instruction asked by the defendant, and refused by the court, had been virtually given in the one given by the court for the plaintiff.

The second one refused, was given, almost word for word, in the second one given by the court, at the instance of the defendant, and there was no reason for giving it a second time,

The third refused, was predicated on a misapprehension of the law, there being no necessity for such a transfer being evidenced by writing. 4. Mo. Rep. 235, and the authorities there cited.

The fourth refused, was not important or necessary to the decision of the cause, as the trespass complained of, was committed prior to the entry at the land office, and the plaintiff's right to an action was predicated on his claim to a pre-emption under the act of Congress.

The fifth refused, had been before given, except as to the erection of a dwelling house by the plaintiff on the land. This is one of the requisites of the act of Congress, and it was in evidence, that the plaintiff had fully complied with that, as well as the other provisions of the law to entitle him to a pre-emption on the land, and the certificate of the Receiver of the Land Office, further shows that fact. The question then arises, shall this court reverse the judgment of the circuit court for this omission, which was no doubt occasioned by the hurry and confusion attending trials in the circuit court? We are satisfied that substantial justice does not require the reversal of the judgment in this case, nor do we think that sound policy dictates such a course. It is a vexatious case, and has no doubt been the source of embittered feelings between the parties litigant, and however anxious they may be to prosecute it further, this court has no disposition to indulge them.

Judge NAPTON concurring herein, the judgment of the circuit court is affirmed.

SCOTT, J., dissents.